**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.: 4:20-cr-00557-HEA-NCC |
| ) | |
| THOMAS G. HOBBS, ) | |
| ) | |
| Defendant. ) | |

**SENTENCING MEMORANDUM**

The defendant, Thomas Hobbs, by his lawyers, Justin Kuehn and Stephen Williams, respectfully requests a 48-month term of imprisonment pursuant to his plea agreement, and in support of that request, he states:

**Introduction**

On October 19, 2023, Dr. Hobbs accepted responsibility for his criminality, waived his right to jury trial, and pled guilty to a single county of Conspiracy to Commit Offenses against the United States, in violation of 18 U.S.C. § 371, as charged in Count I of his Superseding Indictment. The Government has agreed to dismiss all remaining charges against Dr. Hobbs at the time of sentencing.

The effective guidelines range in this case is sixty (60) months. The guidelines produce a range that exceeds this statutory ceiling. Probation determined that the guidelines, absent a 5-year cap, produce an advisory guidelines range of 70-87 months. **See PSR, ¶ 104.** This is based on Probation's finding that the total offense level is twenty-seven (27) and that Dr. Hobbs' criminal history category is I. **See PSR, ¶ 104.** While the defense has lodged objections, regardless of the Court's ruling on those objections, the effective range will remain unchanged.

Dr. Hobbs' inclusion as a defendant at trial would have substantially lengthened the proceedings.  By entering a guilty plea, Dr. Hobbs allowed the Government to allocate its time and resources to the remaining defendants who held the Government to its burden.  Pursuant to the plea agreement, the parties are jointly asking the Court to vary downward from the sixty (60) month effective guidelines range and request the Court impose a sentence of 48 months.

## 18 U.S.C. §3553

While the advisory guidelines range is a 'starting point' for the Court, it is only one of many important sentencing considerations; and, "when sentencing a defendant, a district court must consider all sentencing factors enumerated in 18 U.S.C. §3553(a)." ***United States v. Harris*, 490 F. 3d 589, 593 (7th Cir. 2007).**  The target is to arrive at a punishment that is "sufficient, but not greater than necessary, to comply with the purposes set forth" by the factors enumerated in 18 U.S.C. §3553(a).  This is the provision that serves as "the guidepost for sentencing decisions post-Booker." ***United States v. Ferguson*, 456 F. 3d 660, 667 (6th Cir. 2006).**  Based on the § 3553(a) analysis that follows, the defense respectfully submits that the agreed-to 48-months sentence is sufficient to expiate Dr. Hobbs' criminal wrongdoing.

## 18 U.S.C. § 3553(a)(1)

Pursuant to 18 U.S.C. § 3553(a)(1), the Court is directed to consider "the nature and circumstances of the offense and the history and characteristics of the defendant."

Nature and Circumstances of the Offense

This case involves health care fraud.  Dr. Hobbs is the president and director of a health care clinic named PowerMed.  During relevant times set forth in the Superseding Indictment, Dr. Hobbs ran PowerMed alongside his wife and co-defendant, Vivian Carbone-Hobbs.  One of PowerMed's functions included assisting patients in procuring insurance disability proceeds and

social security disability proceeds. Several of the patients, with Dr. Hobbs' assistance, submitted fraudulent claims leading to false designations of total disability. Among other things, Dr. Hobbs' ordered unnecessary medical testing to bolster his patients' disability claims. Typically, patients received a lump sum insurance payment of $100,000, as well as monthly government payments from the Social Security Administration. Several patients received over $200,000 in SSA payments before agents uncovered their fraud. Probation finds that Dr. Hobbs' relevant conduct is at least $4,247,035.70 in losses. **See PSR, ¶ 52.** This dollar amount mirrors the restitution figure agreed upon by the parties. **See PSR, ¶ 116.**

The criminality involved here is obviously quite serious. The parties' 4-year joint recommendation reflects that. The instant conspiracy lasted several years and yielded substantial loss to several insurance companies, as well as the Government. Thankfully, unlike many other economic crimes, this conspiracy did not include any individual victims, the kind who are often financially crippled by fraud.

Dr. Hobbs also held an elevated function in the conspiracy. This is reflected by the sentence which the parties are jointly requesting, as compared to many of the numerous patients who were already sentenced, most of whom received probationary terms. Despite Dr. Hobbs' aggravating role, the lion's share of loss actually benefited these SSA patients. While Dr. Hobbs no doubt profited from this conspiracy through upfront patient payments and medical reimbursements, his profits paled in comparison to the payments received by the disability patients and other third parties.

<u>History and Characteristics of the Defendant</u>

One aspect of Dr. Hobbs' character that warrants particular attention at sentencing is his ailing health. Dr. Hobbs is plagued by serious heart conditions, including cardiomyopathy, chronic

decompensated heart failure, paroxysmal atrial fibrillation, non-sustained ventricular tachycardia, and hypertension.  **See PSR, ¶ 83.**  He underwent surgery on October 31, 2022, to implant a defibrillator to address his severe cardiomyopathy, with an extremely low ejection fraction of approximately 16%.  It is impossible to know if, and when, Dr. Hobbs will suffer a cardiac event.  Clearly, however, he does face a serious threat that these heart-related conditions will yield an abbreviated lifespan.  Dr. Hobbs is already sixty-six (66) years old.  In this regard, the parties are advocating a sentence that could constitute a significant portion of the remaining time Dr. Hobbs has left.  Of course, Dr. Hobbs understood this in January as he readied for trial, and nevertheless, he ultimately accepted responsibility and entered a guilty plea.

In addition to an ailing heart, Dr. Hobbs suffers a host of other significant medical problems.  He has bilateral osteoarthritis in his hips. **Doc. 768-1 at p. 1 – 11**. As a result, Dr. Hobbs underwent a total left hip arthroplasty on May 4, 2023. **Doc 768-1 at 7-9**.  He is now scheduled for a total hip arthroplasty on is left side to occur three days before sentencing on September 19th, 2023.  Dr. Hobbs also has osteoarthritis in the right elbow with osteophytes. **Doc. 768-1 at 20 – 21**. His elbow specialist has recommended an open elbow debridement and osteophyte removal. **Doc. 768-1 at 21**. Finally, as the Court knows, Dr, Hobbs underwent a spinal laminectomy in December.  Since then, he continues to receive pain management treatments on a regular basis. **Doc. 768-1 at 23 – 42**.   Suffice it to say, Dr. Hobbs is an infirm gentleman and will confront the challenge of enduring pain and addressing health concerns in an unpleasant prison environment.

Dr. Hobbs concededly brought that upon himself.   Still, he hopes to address some of his health concerns before judgment is executed.   Those medical issues that persist will need to either be attended to by the Bureau of Prisons or dealt with upon Dr. Hobbs' release.   The parties' joint recommendation strikes a proper balance between satisfying § 3553(a) factors like punishment

and respect for the law, without foreclosing Dr. Hobbs' ability to hopefully exit prison in time to manage enduring medical problems with his chosen physicians.

## 18 U.S.C. § 3553(a)(2)(A)(B)(C)&(D)

*18 U.S.C. § 3553(a)(2)(A)* dictates that the Court should consider "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."

The parties' proposed sentence is sufficient, but not greater than necessary, to achieve these aims. A just punishment and one that promotes respect for the law not only penalizes an offender but also accounts for noteworthy factors in mitigation, such as Dr. Hobbs' significant medical concerns.

Dr. Hobbs is not a first-time offender, but he is a criminal history category I. His last conviction in 2005 is almost two decades old. Insofar as criminal history is an important consideration at sentencing, the defense respectfully maintains that a crime's statutory maximum should be reserved for offenders who have amassed significant criminal history points. A slight downward variance from the 60-month statutory maximum and effective guidelines range allows some credit for Dr. Hobbs' category I designation, his absence of any recent criminal history, and his acceptance of responsibility – all of which promotes a just punishment and respect for the law. *18 U.S.C. § 3553(a)(2)(B) & (C)* address the need for a sentence to "afford adequate deterrence to criminal conduct… [and] … to protect the public from further crimes of the defendant".

This case will serve as Dr. Hobbs' first exposure to incarceration. In this regard, a 48-month sentence stands to accomplish specific deterrence that his prior probationary sentences did not. Beyond losing his freedom, Dr. Hobbs will endure very substantial collateral costs. Dr. Hobbs presently cares for his 98-year-old mother. The odds are that she will pass away while Dr. Hobbs

is serving his time.  Dr. Hobbs will be forced to leave the service of his chosen medical professionals in favor of the BOP's healthcare.  This prosecution also stands to significantly disrupt – most likely terminate - Dr. Hobbs's ability to practice as a licensed chiropractor.  Finally, Dr, Hobbs will be called upon to pay back substantial fraud proceeds collected primarily by his numerous disability patients.   He is destined for financial ruin.

For many of these same reasons, the parties' recommended sentence will also serve interests of general deterrence.  Any medical professional contemplating similar conduct will be on notice that assisting patients in the commission of fraud can not only result in a considerable prison term, but also in a restitution order that will require repayment of ill-gotten gains received by those patients.   The Government's successful prosecution of Dr. Hobbs, his wife, and their employees will serve as a warning shot to the medical community.

*18 U.S.C. § 3553(2)(D)* addresses the need for the sentence imposed "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

Dr. Hobbs' medical issues are well documented in both earlier sections of this memorandum and in the Presentence Report.  Dr. Hobbs is very grateful to the Court for its patience and indulgence throughout the pendency of this case, as several continuances were granted to assist Dr. Hobbs in receiving various forms of medical care.  Dr. Hobbs still faces many health challenges.   He hopes to address some of those challenges prior to the commencement of his incarceration.  However, many of his medical issues will require lifelong monitoring and could worsen over time, most notably, his cardiomyopathy and his severe degenerative arthritis that is devastating his spinal column and  . Dr. Hobbs obviously hopes to resume care with his preferred physicians as soon as possible.

**18 U.S.C. § 3553(a)(3)(4)&(5)**

These § 3553(a) factors all address the types of sentences available, as well as the guidelines and pertinent policy statements.

The statutory maximum term of imprisonment for this offense is five (5) years. **18 U.S.C. § 371.** There is no prescribed minimum. As mentioned before, there is an effective guidelines range of sixty (60) months because of the statutory maximum. Absent the maximum, Probation determined that the advisory range would have been 70-87 months. **See PSR, ¶104.**

The parties' 48-month request is pursuant to variance rather than a departure. However, to the extent that the advisory guidelines are a component of the Court's § 3553(a) analysis, it is worth noting that a departure could be justified pursuant to § 5H1.4, where the combination of medical ailments from which Dr. Hobbs suffers render him a seriously infirm individual.

**18 U.S.C. § 3553(a)(6)**

This § 3553(a) factor directs the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

The Plea Agreement suggests a term that is in line with this factor and sufficiently accounts for the aggravating role Dr. Hobbs played in this conspiracy. Several of the patient-defendants already received probationary terms, including Glenda Johnson, Sheila Huffman, Gary Walesky, Gregory Vieth, Gary Belcher, James Williams, Steven Schmitz, Susan Schmitz, Lewis Luster, Edward Ahlemeyer, and Kurt Benkert. **See PSR, ¶15-16, 20, 22-24, & 26-30.** Patient Shannon Nenninger received a 12-month term of imprisonment. Two employees at PowerMed, namely Christina Barrera and Clarissa Pogue, both stood trial and were convicted. This Honorable Court sentenced Ms. Barrera to 14 months of incarceration, whereas Ms. Pogue received Probation. This

is all to say that Dr. Hobbs' requested 48-month sentence provides ample separation from his co-defendants to address his elevated culpability.

### 18 U.S.C. § 3553(a)(7)

This § 3553(a) factor directs the Court to consider "the need to provide restitution to any victims of the case."

If the Court accepts the parties' suggested restitution figure, as set forth in the Presentence Report, he will owe $4,247,035.70.  The defense must concede, that despite best efforts, Dr. Hobbs will likely fall short of ever fully satisfying restitution.  However, assuming he is medically fit to do so, Dr. Hobbs will need to work to support himself upon release.  If Dr. Hobbs can find gainful employment after serving his prison term, restitution payments can be made and Dr. Hobbs can begin his efforts to restore the Government and the insurance companies that suffered loss.

### Conclusion

The defense recognizes that justice demands real punishment in this case.  The parties are requesting a sentence that meets that demand, but at the same time, accounts for Dr. Hobbs' ailing health, his acceptance of responsibility, and his designation as a criminal history category I offender.

WHEREFORE, this Honorable Court is respectfully asked to accept the parties' plea agreement, to sentence Dr. Hobbs to a 48-month term of imprisonment, and to enter a restitution order of $4,247.035.70.

s/Justin A. Kuehn

s/ Stephen C. Williams

Kuehn, Beasley & Young, P.C.<br>
23 South 1st Street<br>
Belleville, IL   62220<br>
Telephone: (618) 277-7260<br>
Fax: (618) 277-7718<br>
justinkuehn@kuehnlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 15,  2023, I electronically filed my SENTENCING MEMORANDUM, under seal, with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

<u>s/Stephen C. Williams</u><br>
Kuehn, Beasley & Young P.C.<br>
23 South 1st Street<br>
Belleville, IL   62220<br>
Telephone: (618) 277-7260<br>
Fax: (618) 277-7718<br>
justinkuehn@kuehnlawfirm.com